Faron L. CLARK, Respondent,

v.

Sheri CONNOR, et al., Defendants,

Vydell Jones, Appellant.

No. A13–1110.

Court of Appeals of Minnesota.

Jan. 21, 2014.

Nathan T. Cariveau, Hazelton Law Firm, PLLC, Bemidji, Minnesota, for respondent.

Paul R. Aamodt, Fargo, North Dakota, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; HOOTEN, Judge; and KIRK, Judge.

## OPINION

HOOTEN, Judge.

Appellant co-tortfeasor challenges the district court's judgment against her after a jury found the dog-owner tortfeasors liable, arguing that the dog-attack statute precludes apportioning of liability based on comparative fault between tortfeasors. Because we conclude that the legislature did not intend the dog-attack statute to preclude apportioning of liability based on comparative fault between tortfeasors, we affirm.

## FACTS

A pit bull barked at and chased respondent Faron Clark into the street, where he collided with appellant Vydell Jones's passing van. Respondent sustained serious injuries to his hip, left arm, and head. He sued (a) appellant for common-law negligence and (b) the dog owners, defendants Sheri and Timothy Connor, for both common-law negligence and statutory liability under Minn.Stat. § 347.22, commonly known as the dog-attack statute. Respondent eventually settled his claims against the dog owners and executed a *Pierringer* release.[1] His remaining claim against appellant was resolved in a jury trial.

The jury found that the negligent conduct of respondent, appellant, and the dog owners combined to directly cause respondent's injuries, attributing 10% fault to respondent, 10% to appellant, and 80% to the dog owners. The jury also found that the dog attacked or injured respondent while he was acting peaceably in a place he was entitled to be. Based on this jury finding, appellant requested that the district court relieve her of all liability. The district court denied appellant's request,

---

1. "[A] plaintiff who enters into a *Pierringer* release is limited to recovering that portion of the damages attributable to the non-settling tortfeasor." *Oelschlager v. Magnuson,* 528 N.W.2d 895, 898 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995).

concluding that "[w]hile Minn.Stat. § 347.22 precludes considering the comparative fault of the plaintiff, it does not preclude comparative fault as between defendants nor preclude a consideration of causation." Accordingly, the district court determined that appellant is liable for 10% of damages.

This appeal followed.

## ISSUE

Did the district court err as a matter of law by concluding that the dog-attack statute does not preclude the allocation of fault between a dog owner and a co-tortfeasor under the comparative-fault statute?

## ANALYSIS

■ "Interpretation of a statute presents a question of law, which we review de novo." *Swenson v. Nickaboine,* 793 N.W.2d 738, 741 (Minn.2011). "Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court." *Davies v. W. Publ'g Co.,* 622 N.W.2d 836, 841 (Minn.App.2001), *review denied* (Minn. May 29, 2001).

Under the comparative-fault statute, "[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each." Minn.Stat. § 604.02, subd. 1. " 'Fault' includes acts or omissions that are in any measure negligent ... or that subject a person to strict tort liability." Minn.Stat. § 604.01, subd. 1a (2012). Under the dog-attack statute, "If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained." Minn.Stat. § 347.22.

■ Appellant argues that, in light of the jury's finding that the dog attacked or injured respondent while he was acting peaceably in a place he was entitled to be, in violation of Minn.Stat. § 347.22, the district court erred in applying the comparative-fault statute to allocate fault between her and the dog owners. We disagree.

As an initial matter, appellant's argument ignores the jury's finding that the dog owners are liable under both theories of statutory liability and common-law negligence. Respondent properly sought recovery under both theories. *See Lewellin ex. rel Lewellin v. Huber,* 465 N.W.2d 62, 65 (Minn.1991) (holding that an action based on the dog-attack statute "is not an exclusive remedy" and that "[a]lso available to an injured claimant is a cause of action against the dog owner for common law negligence"). Because the comparative-fault statute allows the allocation of fault for negligent conduct, the district court properly allocated fault between appellant and the dog owners.

Even if the jury had found the dog owners liable solely on the basis of statutory liability, we find no persuasive support for appellant's argument. The comparative-fault statute allows the allocation of fault based on "acts or omissions that are in any measure negligent" and fault based on "acts or omissions ... that subject a person to strict tort liability." Minn.Stat. § 604.01, subd. 1a. The dog-attack statute "leaves the dog owner ... with the strict liability of an insurer." *Lavalle v. Kaupp,* 240 Minn. 360, 363, 61 N.W.2d 228, 230 (1953). Accordingly, the comparative-fault statute allows comparing a dog owner's liability stemming from the dog-attack statute with a co-tortfeasor's negligence.

Appellant relies on *Seim v. Garavalia,* in which the supreme court "conclude[d] that section 347.22 was meant to provide absolute statutory strict liability." 306

N.W.2d 806, 812 (Minn.1981). "The doctrine of absolute liability is applicable when the legislature, by enacting a particular statute, intends to preclude certain defenses and place the entire responsibility for the injury upon the individual who violated the statute." *Id.* at 811. Applying this doctrine, the *Seim* court determined that despite "the specific inclusion of 'strict tort liability' in the comparative fault statute's definition of fault," the dog-attack statute precludes the comparison of a dog owner's strict liability with a dog-attack victim's negligence. *Id.* (footnote omitted).

But *Seim* did not examine whether the dog-attack statute precludes the comparison of a dog owner's strict liability with a co-tortfeasor's negligence. Appellant asserts that "[i]t should not matter, as a matter of policy, whether the comparative fault is that of the plaintiff or, as in this case, that of a co-defendant." But "[b]ecause this court is limited in its function to correcting errors it cannot create public policy." *LaChapelle v. Mitten,* 607 N.W.2d 151, 159 (Minn.App.2000). Moreover, we see no policy served by appellant's proposal to extend *Seim.* In "recogniz[ing] the principle that the legislative body that enacted the comparative fault statute has the authority to carve out or preserve exceptions to the statute in the interest of public policy," the *Seim* court concluded that violators of the dog-attack statute cannot have their liability reduced due to the victim's own negligence so that "recovery is insured in all cases" and that the law "provide[s] for recovery of full damage irrespective of contributory fault." *Id.* at 812–13 (quotation omitted). This

interest in guaranteeing full recovery for a victim is satisfied by allocating fault between a dog owner and a co-tortfeasor in a way that it cannot be satisfied by allocating fault between a dog owner and the victim. Accordingly, *Seim* does not support appellant's argument.

Appellant also relies on *Hill v. Sacka,* in which the Michigan Court of Appeals interpreted Michigan's dog-attack statute.[2] 256 Mich.App. 443, 666 N.W.2d 282 (2003). There, a two-year-old child "was bitten, gnawed, and mauled by defendants' German shepherd." *Id.* at 286. Because a jury found the child's father 75% at fault, the dog owners requested that the judgment against them be reduced accordingly. *Id.* But the Michigan court held that "the fault or negligence of a third person, i.e., not the dog owner or the direct victim of the dog bite, is ... not relevant." *Id.* at 289.

Appellant's reliance on *Hill* is misplaced for three reasons. First, the Michigan court's interpretation of Michigan's statute is not binding on us when interpreting our own statute. *See In re Estate of Holmberg,* 823 N.W.2d 875, 880 (Minn.App.2012) (noting that "other states' interpretations of a uniform or similar law are not binding"), *review denied* (Minn. Nov. 27, 2012). Second, Michigan's dog-attack statute would not apply here anyway because it imposes liability only for dog bites and not for no-contact dog attacks like the one suffered by respondent. And finally, *Hill* is procedurally distinguishable. In that case, "[t]he negligence claim was summarily dismissed pursuant to agreement of the parties. The jury heard and decided the

2. Michigan's dog-attack statute provides:
   If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages

suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.
Mich. Comp. Laws Ann. § 287.351(1) (West 2003).

remaining statutory claim." *Id.* at 286. This case reaches us in the opposite procedural posture—the claims against the dog owners were settled, leaving only the negligence claim against appellant to be tried. The Michigan court in *Hill,* therefore, never considered the issue before us.

Finally, appellant argues that because section 347.22 renders a dog owner liable "to the full amount of the injury sustained," "[t]he legislative intent would suggest that a co-defendant whose liability is premised on negligence would, under principles of equity, be entitled to indemnity from a dog owner whose liability is established as absolute under the statute." Appellant contends that respondent "should not benefit from the hammer of absolute liability to reach a settlement with the dog owner[s] 'to the full amount of the injury sustained,' and then be allowed to pursue the same damages against other parties under a negligence theory."

We are not persuaded. Appellant interprets the phrase "the full amount of the injury sustained" to mean that a dog owner is liable for any and all injuries sustained during an accident involving a dog attack, regardless of whether such accident involves a third party's negligence and whether the dog attack is the sole direct cause of the injuries. But section 347.22 states that "the owner of the dog is liable in damages to the person *so attacked or injured* to the full amount of the injury sustained." (Emphasis added.) Accordingly, the statute imposes liability on a dog owner only for injuries caused by the dog. Appellant's interpretation would mean that if a dog attack is ever a direct cause in any series of unfortunate and tortious events, then the dog owner is solely liable for all injuries sustained and all other tortfeasors are absolved of liability. This interpretation is contrary to the plain language of the statute and would produce absurd re-

sults. *See* Minn.Stat. § 645.17 (2012) (instructing that we should presume that "the legislature does not intend a result that is absurd").

## DECISION

Because the comparative-fault statute allows the allocation of fault for both negligent conduct and conduct that subjects one to strict liability, and because we conclude that the legislature did not intend the dog-attack statute to preclude the allocation of fault between a dog owner and a co-tortfeasor, the district court did not err in determining that appellant is liable for 10% of damages.

**Affirmed.**